LOCKE LORD BISSELL & LIDDELL LLP
Alfred M. Clark III (SBN: 100564)
aclark@lockelord.com
Brandon J. Witkow (SBN 210443)
bwitkow@lockelord.com
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071
Tel: (213) 485-1500
Fax: (213) 485-1200

LOCKE LORD BISSELL & LIDDELL LLP
W. Steven Bryant (*Admitted Pro Hac Vice*)
sbryant@lockelord.com
2800 JP Morgan Chase Tower
600 Travis Street, Ste. 2800
Houston, Texas 77002
Tel: (713) 226-1200
Fax: (713) 223-3717

*Attorneys for Creditor*
Cathay Bank

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In re | ) Case No. 2:10-bk-62057-VZ |
| **SHILO INN, KILLEEN, LLC**, | ) Chapter 11 |
| Debtor and Debtor in Possession, | ) **CREDITOR CATHAY BANK'S OBJECTION TO DISCLOSURE STATEMENT FOR DEBTOR SHILO INN, KILLEEN, LLC** |
| | ) Hearing: |
| | ) Date: March 24, 2011 |
| | ) Time: 1:30 p.m. |
| | ) Place: 255 East Temple Street, Ctrm. 1368 |
| | ) Los Angeles, CA 90012 |

i

**OBJECTION TO DISCLOSURE STATEMENT AND PLAN OF REORGANIZATION**

# **TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | BACKGROUND FACTS ................................................................... | 1 |
| II. | ARGUMENT ..................................................................................... | 2 |
| A. | Legal Standard Applicable to Disclosure Statement .......................... | 2 |
| B. | Objections to Disclosure Statement ................................................... | 4 |
| | (i)    The treatment of Cathay's claim ............................................ | 4 |
| | (ii)   The Debtor should provide further and complete operating information and cash-flow projections................................... | 6 |
| | (iii)  The Disclosure Statement needs to clarify the Plan's proposed impact, if any, on Mark S. Hemstreet's personal guaranty ..... | 8 |
| | (iv)  The Disclosure Statement does not disclose sufficient information about the Debtor's alleged causes of action against Cathay ... | 8 |
| | (v)   The Disclosure Statement and Plan are combined ................. | 9 |
| III. | RESERVATION OF RIGHTS............................................................... | 10 |
| IV. | CONCLUSION ................................................................................... | 10 |

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, 26th Floor
Los Angeles, CA, 90071-3119

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*In re Beyond.com Corp.*,
  289 B.R. 138 (Bankr. N.D. Cal. 2003) ............................................................................... 3

*In re California Fidelity, Inc.*,
  198 B.R. 567 (B.A.P. 9th Cir. 1996) ............................................................................ 3, 9

*In re Duratech Indus., Inc.*,
  241 B.R. 291 (Bankr. E.D.N.Y. 1999) ............................................................................. 3

*In re Duratech Indus., Inc.*,
  241 B.R. 283 (E.D.N.Y. 1999) ......................................................................................... 3

*In re Kim*,
  2010 WL 2850784 (N. D. Cal. July 19, 2010) ................................................................ 6

*In re Monarch Beach Venture, Ltd.*,
  166 B.R. 428, 434-36 (C.D. Cal. 1993) ........................................................................... 6

*In re North Valley Mall, LLC*,
  432 B. R. 825 (Bankr. C.D. Cal. 2010) ........................................................................... 6

*In re Texas Extrusion Corp.*,
  844 F.2d 1142 (5th Cir. 1988) ......................................................................................... 3

*In re United States Brass Corp.*,
  194 B.R. 420 (Bankr. E.D. Tex. 1996) ............................................................................ 3

*In re Village Assocs.*,
  181 B.R. 795 (E.D. Pa. 1995) .......................................................................................... 3

**STATUTES**

11 U.S.C. § 506(b) ................................................................................................................ 4

11 U.S.C. § 1125 ............................................................................................................ passim

11 U.S.C. § 1129 ................................................................................................................... 6

**OTHER AUTHORITIES**

FED. R. BANKR. P. 3016 ......................................................................................................... 9

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, 26th Floor
Los Angeles, CA, 90071-3119

iii

**OBJECTION TO DISCLOSURE STATEMENT AND PLAN OF REORGANIZATION**

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. BACKGROUND FACTS

On February 7, 2011, Shilo Inn, Killeen LLC (the "Debtor") filed a Disclosure Statement and Plan of Reorganization for Debtor Shilo Inn, Killeen, LLC [Doc. No. 56] ("Disclosure Statement"). The Disclosure Statement combines both a disclosure statement and a plan of reorganization ("Plan") into one document. The Debtor seeks approval of the Disclosure Statement under 11 U.S.C. § 1125.

The Debtor owns a hotel project in Killeen, Texas ("Hotel") operated under the Shilo Suites name. The Debtor is ultimately controlled by Mark S. Hemstreet. Mr. Hemstreet also ultimately owns or controls both: (i) the franchisor of the Shilo name, and (ii) the management company for the Hotel. Upon information and belief, the Debtor incurs and pays management or franchise fees every month to these insider entities in excess of $10,000.

Cathay Bank ("Cathay") is the Debtor's largest creditor. On or about December 11, 2007, the Debtor and Cathay entered into a Letter Loan Agreement (the "Loan Agreement") for a loan in the principal sum of FIFTEEN MILLION FIVE HUNDRED THOUSAND DOLLARS ($15,500,000.00) ("Loan").[1] The Loan is secured by substantially all the Debtor's real and personal property, including the Hotel (the "Property").

The Loan is evidenced by, *inter alia*, that certain Term Note dated as of December 11, 2007 in the original principal amount of $15,500,000.00 (the "Note")

---

[1] This history was previously set forth in Cathay's Motion to Transfer Venue [Doc. No. 33] ("Venue Motion") on January 12, 2011 and the accompanying Declaration of Gregory Badura ("Badura Declaration") (which included true and correct copies of all these documents.) At the February 8, 2011 hearing on the Venue Motion, this Court denied both Cathay's and the Debtor's evidentiary objections and admitted the Badura Declaration and its accompanying documents into evidence. *See* Order (i) Denying Motion to Transfer Venue and (ii) Motion to Strike [Doc. No. 60], entered on February 18, 2011. Cathay requests that this Court take judicial notice of this evidence in support of this Objection.

1

**OBJECTION TO DISCLOSURE STATEMENT AND PLAN OF REORGANIZATION**

in favor of Cathay from the Debtor. To secure the Debtor's obligations under the Loan, the Debtor delivered to Cathay that certain Deed of Trust, Absolute Assignment of Rents, Security Agreement and Financing Statement, dated as of December 11, 2007 ("Deed of Trust"). The Deed of Trust creates a valid, fully perfected lien and deed of trust against the Property. Besides the Deed of Trust, the Debtor also executed an Absolute Assignment of Rents, dated as of December 11, 2007 ("Rental Assignment"), in which it assigned all rents and other income generated by the Property to Cathay.

Beginning in December 2009, the Debtor stopped making the required payments due on the Loan and did not meet its March 31, 2010 deadline for providing Cathay with the payment receipts for the Debtor's 2009 ad valorem taxes. Both failures constituted events of default under the Loan Documents. In November 2010, the Property was posted for a December 7, 2010 foreclosure sale. This sale was stayed when the Debtor filed this Bankruptcy Case on December 6, 2010 (the "Petition Date").

On March 2, 2011, Cathay filed a Proof of Claim ("Proof of Claim") with the Bankruptcy Court. According to this Proof of Claim, Cathay's claim as of the Petition Date is $15,751,975.93. This amount does not include any post-petition interest, attorneys' fees, costs or other charges, if applicable.

## II. LEGAL ARGUMENT

### A. Legal Standard Applicable to Disclosure Statement

A disclosure statement must contain "adequate information" before a bankruptcy court may approve it. 11 U.S.C. § 1125 (2011). Section 1125(a)(1) of Title 11 of the United States Code (the "Bankruptcy Code") defines "adequate information" as:

> [I]nformation of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor,

*Locke Lord Bissell & Liddell LLP*
*300 South Grand Avenue, 26th Floor*
*Los Angeles, CA, 90071-3119*

and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information….

*Id*. § 1125(a)(1).

In practice, courts have characterized the phrase "adequate information" as information sufficient to permit the holders of claims against a debtor to make an informed choice regarding the approval or rejection of a plan. *In re California Fidelity, Inc.*, 198 B.R. 567, 571 (B.A.P. 9th Cir. 1996); *see also In re Texas Extrusion Corp.*, 844 F.2d 1142, 1157 (5th Cir. 1988), *cert. den*. 488 U.S. 926 (1988). A disclosure statement should provide creditors with enough information about the proposed plan for them to decide whether to approve its treatment of their claims. *In re Duratech Indus., Inc*., 241 B.R. 291, 298 (Bankr. E.D.N.Y. 1999), *aff'd In re Duratech Indus., Inc*., 241 B.R. 283 (E.D.N.Y. 1999). Determining whether a plan provides "adequate information" lies largely within the bankruptcy court's discretion. *In re Village Assocs*., 181 B.R. 795, 804 (E.D. Pa. 1995) (noting that what constitutes "adequate information" lies within the bankruptcy court's "substantial discretion").

Besides the adequate-information requirement, a disclosure statement should not be approved if the statement describes a plan of reorganization that, on its face, cannot be confirmed. *In re Beyond.com Corp.*, 289 B.R. 138, 140 (Bankr. N.D. Cal. 2003); *In re United States Brass Corp.*, 194 B.R. 420, 422 (Bankr. E.D. Tex. 1996). Under these circumstances, a court can deny approval of the disclosure statement since to do otherwise would unnecessarily waste judicial resources.

//
//

**B.        Objections to Disclosure Statement**

This Court should deny the Debtor's request to approve the Disclosure Statement because: 1) it fails to provide "adequate information" under Bankruptcy Code § 1125 and 2) it describes a "patently unconfirmable" plan of reorganization. *See Beyond.com*, 289 B.R. at 140.

    (i)    The treatment of Cathy's claim.

First, the Disclosure Statement does not adequately describe the Debtor's proposed treatment of Cathay's claim for several reasons. The Disclosure Statement proposes that Cathay's secured claim is $15,350,000 and that Cathay should receive specific monthly payment amounts based on this amount. (Disc. Stat. p. 16). However, the $15,350,000 claim proposed by Debtor is significantly less than Cathay's claim of $15,751,975.93 as of the Petition Date. (*See* Proof of Claim). Further, the Debtor asserts that Cathay is over-secured. (Disc. Stat. p. 20). Assuming solely for purposes of argument, that Cathay is over-secured,[2] the proposed $15,350,000 claim for Cathay does not include the post-petition component of Cathay's claim under Bankruptcy Code § 506(b), which will likely be substantial.

Accordingly, the Disclosure Statement should, at a minimum, explain what treatment the Debtor proposes for that portion of Cathay's claim that exceeds $15,350,000—whether or not Cathay is over-secured. Further, the Plan should identify whether the Debtor proposes to treat Cathay as an over-secured creditor or under-secured creditor under the Plan. If the Debtor proposes to treat Cathay as an over-secured creditor, then the Plan should identify the treatment of the post-petition interest, charges and fees that are part of Cathay's claim.

Second, the proposed treatment of Cathay's claim renders the Plan patently unconfirmable. Remarkably, the Debtor proposes to pay Cathay's claim over a period of thirty (30) years with an interest rate of 3.75% (with the caveat of paying such rate

---

[2] Cathay does not admit that it is over-secured or admit the Debtor's contentions concerning value.

**OBJECTION TO DISCLOSURE STATEMENT AND PLAN OF REORGANIZATION**

as the Court determines.) (Disc. Stat. p. 16). The Debtor also does not make any payments to Cathay for the first five (5) months of 2011 or arrange to make any catch-up payments for this five-month period during the period after Plan confirmation. By contrast, the Note had a five-year term and a stated maturity date of December 1, 2012, with amortization based on a twenty-five (25) year amortization schedule.

A few facts show that the Debtor's proposed treatment of Cathay is inappropriate. For instance, the current interest rate for thirty (30) year Treasury Bonds is approximately 4.50%.[3] Since repayment of Cathay's Loan to the Debtor is not risk-free and the Debtor does not have the right to (lawfully) print currency, it makes no sense for Cathay to receive a lower rate of interest than that paid on these U.S. government instruments. Similarly, the Debtor intends to pay twelve percent (12%) interest on Bell County's ad valorem tax claims. (Disc. Stat. p. 12). The Debtor offers no justification for this disparity between the rate paid on Bell County's secured claim versus Cathay's.

Furthermore, as noted, the Debtor proposes to pay entities controlled by Mr. Hemstreet ongoing management fees that exceed $10,000 per month. (Disc. Stat. Exh. C). Similarly, non-insider, unsecured creditors are projected to be paid in full by September 1, 2012 while all *insider*, unsecured creditors (such as the entities Mr. Hemstreet controls) are projected to receive full payment by no later than December 1, 2012 (*Id.* pp. 17-18). Though Cathay disagrees with the Debtor's projections, the Debtor nevertheless predicts that it will generate significant revenue above operating expenses and the proposed Plan payments starting this year. Apparently, the Debtor reserves the right to distribute this cash while forcing Cathay to wait decades before returning to Cathay any significant proportion of the principal on its claim. Thus, the

---

[3] The prevailing rate for 30-year Treasury Bonds is set forth on the website of the U.S. Department of the Treasury at http://www.treasury.gov/resource-center/data-chart-center/interest-rates/Pages/TextView.aspx?data=yield. Cathay does not admit that the appropriate rate should be set by reference to the 30-year Treasury bond rate.

5

**OBJECTION TO DISCLOSURE STATEMENT AND PLAN OF REORGANIZATION**

Debtor is placing all risk—whether risk of loss, of interest-rate changes, or of property or market decline—on Cathay.

Cathay understands that Plan treatment is typically a confirmation issue, rather than a disclosure issue. Here, though, the proposed treatment of Cathay is punitive and demonstrates the difficulty in resolving this case. Cathay respectfully submits that this treatment, on its face, is not confirmable under Section 1129(b)(2).[4] *In re Monarch Beach Venture, Ltd.*, 166 B.R. 428, 434-36 (C.D. Cal. 1993) (a plan cannot shift risk of loss entirely to secured creditor); *In re North Valley Mall, LLC*, 432 B. R. 825, 830-31 (Bankr. C.D. Cal. 2010) (discussing factors that courts should consider when evaluating a proper "cramdown" interest rate under § 1129(b)(2)(A)(i)); *In re Kim*, 2010 WL 2850784, at *1 (N. D. Cal. July 19, 2010) (denying confirmation of a plan that stretched out a matured note for thirty years because it "shifts the risk of further loss if the current economic crisis deepens").

In any case, from a disclosure perspective, the Debtor should explain its rationale or methodology supporting this 3.75% annual interest rate and the punitive thirty-year payout of Cathay's claim.

    (ii)    <u>The Debtor should provide further and complete operating information and cash-flow projections</u>

Attached to the Disclosure Statement are: (a) Exhibit C—projections of cash flow ("Projections") and (b) Exhibit D—certain historical operating information for the years 2009 and 2010 ending in November. The Debtor should provide the following further information in, or regarding, its historical operations, cash-flow Projections and monthly reports and/or address the following issues:

    (1)    The Debtor should provide historic operating information for the full calendar years ended 2009 and 2010, rather than ending in November;

---

[4] This argument does not constitute all the objections Cathay may have to the Plan or any other plan of the Debtor, such as, without limitation, objections based upon the lack of feasibility. Cathay reserves all rights and objections it may have to any plan (including the Plan.)

(2) The historic information and projected information should be presented (or at least the differences explained and reconciled) using the same methodology or using similar line items so that creditors can compare this information with the Projections on an apples-to-apples basis. For example, the 2010 statement has a revenue line-item called rent of approximately $100,000 that does not appear in the Projections. The "other" revenue in the Projections also appears much higher than the historic "other" revenue, and there is not an obvious line item for reserves for replacements, if any will be funded. Lastly, the line items for taxes, insurance and rent are no longer segregated and appear quite higher in the Projections;

(3) The Debtor should explain the current category of "other income" in the Projections;

(4) The Debtor should explain and provide projections regarding the operation, revenue and expense of the Hotel restaurant. The Debtor's monthly operating reports identify a revenue line item called restaurant rent. On the other hand, there is no such line item in the Projections, which instead seem to contemplate subsidizing restaurant operations through a line-item, ongoing deduction from the Debtor's total projected income called "Estimated Restaurant Short Fall Funding." (Disc. Stat. Exh. C). The Debtor should disclose whether the restaurant is, or has ever been, subject to a lease, who the lessee under that lease is, and what the current status of the matter may be. Further, the Debtor should also explain the restaurant's projected role in its operations and provide both projected and historical operating information;

(5) The Projections assume a Sales & Marketing Expense much lower than for the 2009 income year. Yet, the projections present Room Revenue consistently higher than the $3,254,663 and $3,320,181 identified by the Debtor for 2009 and 2010, respectively. In general, the significant increases above historical averages for both Room Revenue and Total Income set forth in the Projections merit substantial additional explanation and justification—especially considering the projected

7

**OBJECTION TO DISCLOSURE STATEMENT AND PLAN OF REORGANIZATION**

1  simultaneous cuts in the Debtor's sales and marketing budget;

2      (6)    The Debtor should explain why, according to its 2009 and 2010 historical income statements, its Depreciation Expense fell by $891,464 from 2009 to 2010. If the Debtor removed equipment or other depreciable assets from service between 2009 and 2010, then the Debtor should explain how and why it did so; and

    (7)    The Debtor should provide information sufficient to reconcile the methodology used in the monthly operating reports and the Projections—if there is a difference. (Cathay will work informally to resolve this item.)

    (iii)    <u>The Disclosure Statement needs to clarify the Plan's proposed impact, if any, on Mark S. Hemstreet's personal guaranty</u>.

The Debtor's proposed treatment of Cathay's claim contains a statement that the "[e]xisting personal guaranty of Mark S. Hemstreet shall remain unaffected (reduced to 25% of Debtor's obligations per pre-petition agreement)." (Disc. Stat. p. 16). In the context presented, the Debtor should clarify whether the Plan proposes to impair or adjust Cathay's rights against Mr. Hemstreet on the same basis as the proposed impairment and adjustment of Cathy's claim against the Debtor. Clearly, a discharge under Section 1141 is personal to the Debtor and cannot discharge or release a non-debtor like Mr. Hemstreet. The Debtor should clarify whether the Plan proposes to alter or impair Cathay's rights against Mr. Hemstreet. The current description of the proposed discharge contained in the Disclosure Statement is inadequate. (Disc. Stat. p. 31).

    (iv)    <u>The Disclosure Statement does not disclose sufficient information about the Debtor's alleged causes of action against Cathay</u>.

In the section describing alleged "Post-Confirmation Causes of Action," the Disclosure Statement asserts that the Debtor "may hold claims and causes of action against Cathay and related parties in connection to pre-petition conduct which may rise to the level of lender liability." (Disc. Stat. p. 31). The Debtor also claims to "hold claims against Cathay with respect to an avoidable transfer related to Cathay['s]

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, 26th Floor
Los Angeles, CA, 90071-3119

1 recording a UCC-[1] Financing Statement with respect to property of the Debtor's

2 estate on the even [sic] of this bankruptcy filing." (Id.).

3 The Debtor should provide additional disclosure concerning these alleged

4 causes of action. If, for instance, the Debtor intends to assert these claims, then the

5 Debtor should explain, *inter alia*, whether and when it intends to bring a complaint

6 against Cathay, and what effect, if any, these claims may have on the treatment of

7 Cathay's claim.

8     (v)    <u>The Disclosure Statement and Plan are combined</u>.

9 The Debtor combines the Plan and Disclosure Statement into one document.

10 (Disc. Stat. p. 1). This Bankruptcy Case is not a small business case. (*See* Debtor's

11 Voluntary Pet., Doc. No. 1). Thus, the Debtor may not take advantage of Bankruptcy

12 Code § 1125(f)(1), which permits small business debtors, with court permission, to

13 combine their plan and disclosure statement. *See* 11 U.S.C. § 1125(f)(1); FED. R.

14 BANKR. P. 3016. Instead, both § 1125(b) and Rule 3016(b) of the Federal Rules of

15 Bankruptcy Procedure ("Bankruptcy Rules" or "FRBP") require the Debtor to submit

16 a separate "written disclosure statement" in addition to its Plan. 11 U.S.C. § 1125(b).

17 By not filing a disclosure statement separate from its Plan, the Debtor has violated §

18 1125(b) and FRBP 3016.

19 Cathay's concern in this regard does not represent a mere technical objection

20 interposed solely for reasons of delay. Combining the two documents makes it

21 difficult for Cathay and other creditors to distinguish between the document's legally

22 operative components (i.e., the Plan terms) and its merely descriptive provisions (i.e.,

23 the Disclosure Statement passages.) This combined Disclosure Statement and Plan

24 creates confusion and impairs a creditor's ability to make an informed judgment about

25 the Plan and understand the operative Plan terms. *See California Fidelity, Inc.*, 198

26 B.R. at 571 ("The purpose of a disclosure statement is to give all creditors a source of

27 information which allows them to make an informed choice regarding the approval or

28 rejection of a plan."). The Debtor must solve this problem by submitting a separate

**Locke Lord Bissell & Liddell LLP**
**300 South Grand Avenue, 26th Floor**
**Los Angeles, CA, 90071-3119**

9

**OBJECTION TO DISCLOSURE STATEMENT AND PLAN OF REORGANIZATION**

Disclosure Statement and Plan.

## III. RESERVATION OF RIGHTS

Cathay reserves the right to further amend, modify or supplement this Objection at any time (including at the hearing on the Disclosure Statement.) Cathay also reserves all its rights in connection with the Disclosure Statement and Plan and/or as a creditor and party in interest in this Bankruptcy Case.

## IV. CONCLUSION

This Court should not approve the Disclosure Statement because it does not provide "adequate information" as required by Bankruptcy Code § 1125(b), and it proposes a plan of reorganization that, on its face, cannot be confirmed. Cathay therefore requests that this Court deny approval of the Disclosure Statement.

WHEREFORE CATHAY BANK requests that this Objection be considered, that approval of the Disclosure Statement be denied, and that Cathay be granted all other proper relief to which it may be entitled under law or at equity.

| Dated: March 10, 2011 | Respectfully submitted, |
|---|---|
| | LOCKE LORD BISSELL & LIDDELL LLP |
| | By: /s/ Brandon J. Witkow |
| |    Alfred M. Clark III |
| |    W. Steven Bryant (*admitted pro hac vice*) |
| |    Brandon J. Witkow |
| | Attorneys for Creditor Cathay Bank |